312

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GARY LA VALLEY, Defendant-Appellant.

Second District   No. 77-521

Opinion filed July 27, 1979.

Mary Robinson, Allen L. Wiederer, and John Lanahan, all of State Appellate
Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (John T. Elsner,
Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the
court:

Gary LaValley and Marilyn Hoock were jointly charged with
robbery, battery and kidnapping. They were tried by a jury and, at the
conclusion of the State's case, a directed verdict of not guilty was entered
by the trial court as to the defendant Marilyn Hoock. The jury found the
defendant LaValley guilty of robbery and battery; were unable to agree
on the charge of kidnapping and the trial court granted a motion for a
directed verdict as to that charge. The defendant was sentenced to 3—9
years in the penitentiary.

In this appeal the defendant contends that he was denied a fair trial
as counsel for the co-defendant stated, in her opening statement, that "the
defendant Marilyn Hoock did not know Gary LaValley had ever been
convicted of a crime." The second argument raised by the defendant is

that he was denied due process where the trial court failed to instruct the jury that their verdict must be unanimous. Defendant does not raise the issue of sufficiency of the evidence and, in fact, testified in his own behalf that he took the money in question from the wallet of the victim.

The evidence is undisputed that the defendant met the victim in the Circus-Circus tavern located on North Avenue in Du Page county, where they had several beers together. At the request of the defendant the victim then drove the defendant, who did not have a car, to the Tumble Inn tavern, located in or near West Chicago. The sum of $200 was acquired at this point by the defendant from the victim. After having a beer there, at the request of the defendant, they drove to the Coachlight Hotel, located on North Avenue, where they picked up Marilyn Hoock with the defendant driving the three of them north on Route 59 and stopped at a gas station for gas. It is agreed that the victim shouted to the attendant at the filling station that he was being kidnapped and for the attendant to call the police. At that point the defendant drove hurriedly from the station without getting gas. The victim attempted to grab the wheel of the car from the back seat, and the defendant admitted striking the victim in the face with his elbow. Shortly thereafter the car was stopped by the police, whom the station attendant had called.

In justification for the taking of the money and the striking of the victim, the defendant testified that the victim asked the defendant to allow him to commit fellatio upon the defendant. Defendant testified that the victim offered to pay him $200 for so doing. Defendant testified that after the act the victim refused to pay him the $200 and, as a result, the defendant took a $100 bill and two $50 bills from the victim which were later recovered from a cigarette package in the possession of the defendant Hoock.

The victim testified that at the Circus-Circus tavern the defendant advised him that he had more money than the victim had and displayed $80. The victim then showed the defendant that he had $200. The victim further testified that after they left the Tumble Inn tavern the defendant said that he was going to take the $200 from him, which he proceeded to do. At this point the defendant beat the victim in the face with his fists. The defendant then made the victim lie on the backseat of his own car under a blanket and drove to the Coachlight Hotel, where the defendant picked up his girlfriend, Marilyn Hoock. The three then drove west on North Avenue to Route 59 and at the gas station there the victim called to the attendant from the back seat that he was being kidnapped and to call the police. The defendant hurriedly drove away and then struck the victim several more times in the face with his fist.

The filling station attendant testified that when the vehicle drove into the station he only saw two people in the front seat, one of whom he identified as the defendant. The attendant went back to the driver to get

the keys for the gas cap and at that point an older man popped up from the floor of the back seat, yelled for help, told him that he was being kidnapped and to call the police. He noted that the victim's eyes were blackened, his lip was swollen and blood was on his face. This, of course, was contradictory to the statement of the defendant in his own behalf that he had not struck the victim prior to this time. The attendant further testified that the defendant and the passenger pushed the victim back down on the floor and drove off. He then called the police.

While not raised as an issue as to the sufficiency of the evidence, as indicated above, the jury obviously did not believe the testimony of the defendant. It is also to be noted that the victim was 59 years old, 5'7" in height and weighed 135 pounds while the defendant is 6'1" and weighed 180 pounds.

■■ We turn then to the first contention of the defendant, namely that the attorney for his co-defendant made the opening statement in which she stated that Marilyn Hoock did not know Gary La Valley had ever been convicted of any sort of crime. The State points out that at least five times the jury were advised that the opening statement of counsel did not constitute evidence which should be so considered. A motion for mistrial on behalf of the defendant was made, which was reserved and, upon being renewed, was denied at a later time in the proceedings. At the outset the statement of the attorney for the co-defendant did not, in fact, state that the defendant had been convicted of a crime. The statement merely is that she did not know that he had been convicted of a crime. No direct statement was made that he had been so convicted. Under the facts of this case the statement is harmless error beyond a reasonable doubt. We fail to see how such a statement, even if construed as a statement that the defendant has been convicted of a crime, would have had any bearing on the verdict of the jury from the evidence produced in open court. The State points out that the argument of the defendant that the trial court should have, *sua sponte*, admonished the jury to disregard the statement was not valid. It may well have been trial strategy not to request the court to do the same as this might well have emphasized the issue, if any. Counsel for the defendant did not request the trial court to do so but moved for a mistrial on the basis of the statement made. We find defendant's argument in this regard to be without merit.

■■ We turn then to the second contention of the defendant that reversible error was made by the trial court in failing to instruct the jury that the verdict must, in fact, be unanimous. Apparently such an instruction was tendered, although the same is not found in the file. Unbelievably, the court refused to give such an instruction, stating, "This one, because it screws up my method of presenting the case." Attorney for the defendant said, "I think they should be told it should be

unanimous" and the court replied, "Oh yes." The record does not disclose that the court at any time instructed the jury that the verdict should be unanimous. Obviously such an instruction should be given in any criminal case and the court was definitely in error in failing to give such an instruction. On the other hand we fail to see any harm to the defendant by the failure of the trial court to give such an instruction. As a matter of fact, the verdicts as to robbery and battery were unanimous and the jury was unable to agree on a verdict of guilty as to the kidnapping charge which, of itself, indicates that the jury knew that the verdict must necessarily be unanimous.

The cases cited by defendant, *People v. Maxey* (1976), 37 Ill. App. 3d 905, 346 N.E.2d 51, and *People v. Marino* (1972), 5 Ill. App. 3d 778, 284 N.E.2d 54, are important to the case before us. In those cases defendants were objecting to the instruction Illinois Pattern Jury Instructions, Criminal, No. 26.01 (1968), providing that a verdict must be unanimous as it did not allow for a "hung jury." This contention was rejected and the cases have no application to the issue before us as we have indicated.

In retrospect the testimony of the defendant as an excuse for the robbery and the battery was nebulous at best. The jury were certainly justified in determining the credibility of the testimony of the two witnesses involved, to-wit: the defendant and the victim. Additionally, the testimony of the defendant as to the battery (that he had not struck the victim until their appearance at the gas station) was disproven by the testimony of the attendant who noted blood on the victim along with the black eyes. Substantiating the testimony of the attendant, the officer from the South Elgin police department testified that the victim's face was bloody and bruised, his nose looked as if it had been broken and his eyes were swollen. A deputy sheriff of Du Page county testified as to the injuries of the victim as being a swollen and bruised face, his left eye was particularly swollen and there was a bruise on his right shoulder. It is not probable that such injuries were caused by only the few blows admitted by the defendant.

For the reasons stated above, the verdict of the trial court is affirmed.

Affirmed.

SEIDENFELD and LINDBERG, JJ., concur.